UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| ERIKA M., <br><br> Plaintiff, <br><br> v. <br><br> FRANK BISIGNANO, Commissioner of Social Security, <br><br> Defendant. | No. ED CV 25-01283-DFM <br><br> MEMORANDUM OPINION AND ORDER |

Plaintiff Erika M. appeals the Commissioner's decision denying her applications for disability insurance benefits and supplemental security income.[1] For the reasons set forth below, the Court affirms the agency's denial of benefits and dismisses this action with prejudice.

## I. BACKGROUND

Plaintiff applied for disability insurance benefits and supplemental security income on March 21, 2023, alleging disability beginning October 31,

---

[1] The Court partially redacts Plaintiff's name in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

2021. See Dkt. 11, Administrative Record ("AR") 1022-31.[2] Both claims were denied initially on March 28, 2023, see AR 866-85, and upon reconsideration on February 8, 2024, see AR 886-909. Thereafter, Plaintiff requested and received a hearing before an administrative law judge ("ALJ") on September 4, 2024. See AR 830-68. The ALJ issued an unfavorable decision on October 3, 2024. See AR 23-47.

The ALJ followed the five-step sequential evaluation process for determining whether an individual is disabled. See 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 31, 2021, the alleged onset date. See AR 28. At step two, the ALJ found that Plaintiff had the severe impairments of "systemic lupus erythematosus with inflammatory arthritis, migraine headaches, obesity, major depressive disorder, panic attack disorder, posttraumatic stress disorder, and borderline personality disorder." AR 29. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. See AR 31.

After considering the record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with several additional limitations. See AR 33. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. See AR 40. At step five, considering Plaintiff's documented vocational background and the opinion of a vocational expert, the ALJ found that there are jobs that exist in significant numbers in the national economy

---

[2] Citations to the AR are to the record pagination. All other docket citations are to the CM/ECF pagination.

that Plaintiff could perform, including collator operator, assembler small products II, and sub-assembler. See AR 41-42. Consequently, the ALJ found that Plaintiff was not disabled from October 31, 2021, through the date of the decision. See AR 42.

The Appeals Council denied review of the ALJ's decision. See AR 7-13. Plaintiff then sought judicial review from this Court. See Dkt. 1.

## II. LEGAL STANDARD

A district court will set aside a denial of benefits only if "it is either not supported by substantial evidence or is based upon legal error." Luther v. Berryhill, 891 F.3d 872, 875 (9th Cir. 2018) (citation omitted). Under the substantial-evidence standard, the district court looks to the existing administrative record and determines "whether it contains sufficient evidence to support the agency's factual determinations." Biestek v. Berryhill, 587 U.S. 97, 102 (2019) (citation omitted) (cleaned up). "Substantial" means "more than a mere scintilla" but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 103 (citation omitted). This threshold "is not high" and "defers to the presiding ALJ, who has seen the hearing up close." Id. at 103, 108. "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).

## III. DISCUSSION

The parties dispute whether the ALJ properly: (1) considered Plaintiff's combination of impairments in determining the RFC and (2) considered Plaintiff's subjective symptom testimony. See Dkt. 15, Plaintiff's Opening Brief ("Pl.'s Br."); Dkt. 16, Defendant's Brief ("Def.'s Br."); Dkt. 17, Plaintiff's Reply Brief ("Reply").

A. **RFC Determination**

Plaintiff argues that the ALJ's RFC is not supported by substantial evidence. See Pl.'s Br. at 4-11.

A claimant's RFC is the most they can still do despite his or her physical or mental limitations. See 20 C.F.R. §§ 404.1545(a), 416.945(a); Laborin v. Berryhill, 867 F.3d 1151, 1153 (9th Cir. 2017). In determining a claimant's RFC, an ALJ must assess all relevant evidence. See 20 C.F.R. §§ 404.1545(a), 416.945(a); Laborin, 867 F.3d at 1153. The ALJ must discuss significant and probative medical evidence and, if she rejects or discounts it, explain why. See Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (holding federal courts "demand that the agency set forth the reasoning behind its decisions in a way that allows for meaningful review"). The ALJ need not consider or include alleged impairments that have no support in the record. See Osenbrock v. Apfel, 240 F.3d 1157, 1163-64 (9th Cir. 2000).

Plaintiff offers three points of error. First, Plaintiff argues that it "is unclear what substantial evidence the ALJ relied upon in assessing" her RFC. See Pl.'s Br. at 5-6. The Court disagrees. The ALJ discussed significant and probative medical evidence pertaining to Plaintiff's lupus with inflammatory arthritis, migraine headaches, obesity, and psychological issues. See AR 36-38. The ALJ subsequently discussed the prior administrative medical findings and opinions, ultimately finding the opinions of the State agency medical consultants to be partially persuasive, and the opinions of Beth Bathgate, M.D., and M. Waber, D.O., to be unpersuasive. See AR 38-39. Plaintiff's suggestion that the ALJ "effectively rejected" the opinions of the State agency medical consultants by adding additional limitations is not well-taken.

Second, Plaintiff argues that the ALJ's finding in the RFC that she "requires a single-point cane for walking distances greater than 30 yards" is not supported by substantial evidence. See Pl.'s Br. at 6-8 (citing AR 33). Plaintiff

contends that the ALJ ignored evidence showing that she requires a cane for all ambulation and uses a walker. See id. at 8. To the contrary, the ALJ acknowledged Plaintiff's testimony that she needed a cane and, at times, a walker to ambulate. See AR 36. The ALJ found that Plaintiff's testimony regarding ambulation was inconsistent with the evidence, rejecting "the assertion that a walker was required for ambulation." Id.

In support, Plaintiff points to an August 25, 2023 comprehensive physical therapy evaluation indicating that she could ambulate 75 feet (25 yards) with a single-point cane. See Pl.'s Br. at 8 (citing AR 4054-89). But that opined limitation is nearly identical to the 30-yard limitation that the ALJ adopted in the RFC. Plaintiff also points to a February 20, 2024 visit where she was prescribed a walker for chronic bilateral knee pain. See Pl.'s Br. at 8 (citing AR 6878-81). In that telephone visit, however, Plaintiff merely requested a durable medical equipment referral for a walker due to her knee pain. See AR 6880 ("Pt requesting DME for walker due to chronic knee pain."). This is the only reference to a walker cited by Plaintiff in her entire medical history.

Third, Plaintiff argues that the ALJ's findings of improvement ignored the fact that her symptoms waxed and waned. See Pl.'s Br. at 8-10. As an example, Plaintiff acknowledges that medication helped her pain but asserts that "does not mean she was capable of functioning physically on a sustained basis, five days a week." Pl.'s Br. at 9. But Plaintiff does not cite to any record evidence that undercuts or calls into question the ALJ's RFC analysis. At best, Plaintiff has offered an alternative interpretation of the record, which is an insufficient basis for reversal. See Burch, 400 F.3d at 680-81.

Remand is not warranted on this claim of error.

**B.  Subjective Symptom Testimony**

Plaintiff argues the ALJ failed to provide clear and convincing reasons to reject her statements. See Pl.'s Br. at 11-17.

5

1. **Applicable Law**

The ALJ applies a two-step analysis to assess a claimant's credibility for symptom severity. See Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017). Once the claimant "has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged," then, absent evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." Id. (citation omitted). "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (citation omitted).

"The clear and convincing standard is the most demanding required in Social Security cases." Trevizo, 871 F.3d at 678 (citation omitted). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." Brown-Hunter, 806 F.3d at 493 (citation omitted). However, "an ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to the Social Security Act." Smartt v. Kijakazi, 53 F.4th 489, 499 (9th Cir. 2022) (citation and internal quotation marks omitted). The clear and convincing "standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." Id.

2. **Plaintiff's Testimony**

The ALJ accurately summarized Plaintiff's testimony as follows.

> The claimant reported symptoms arising from lupus, numbness, joint pain, extremity pain, vertigo, urinary tract infection, cysts, rheumatoid arthritis, liver and kidney issues, dyslexia,

> posttraumatic stress disorder, blood clots, lupus, and personality disorder primarily limited the claimant's ability to work.
>
> The claimant testified that she had good days and bad days. The claimant testified that she had difficulty walking and used a cane or walker to move around. . . . The claimant testified that she had a history of carpal tunnel syndrome and trigger finger surgery. The claimant testified that she continued to have hand problems, such as dropping items. The claimant testified that she had shoulder pain and had difficulty reaching. The claimant testified that she had ankle and knee pain. The claimant testified that her ankle pain worsened after 10 minutes of walking. The claimant testified that she felt sleepiness, sickness, and fatigue. The claimant further suggested in the function report that difficulty with muscle and joint pain, hand pain, swelling, right eye issues, and hip pain limited the claimant's ability to work and perform activities of daily living.

AR 34 (citations omitted).

### 3. Analysis

The ALJ partially discredited Plaintiff's allegations at the second Trevizo step, finding that her medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 34. Specifically, the ALJ found that Plaintiff's statements were inconsistent with the medical evidence, her activities of daily living, and improvement with treatment. See AR 35-36.

Plaintiff asserts that the ALJ's assessment of her mental impairments has no relation to her physical impairments. See Pl.'s Br. at 13-14. Plaintiff's suggestion of error is unclear, as the ALJ discussed Plaintiff's physical impairments a few pages later. Regardless, the ALJ's finding is supported by substantial evidence. "When objective medical evidence in the record is

7

inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." Smartt, 53 F.4th at 498.

The ALJ cited specific, clear, and convincing examples to establish that Plaintiff's testimony was inconsistent with the objective medical evidence. Plaintiff testified that she experienced anxiety every day for several hours and had trouble with focus and concentration. See AR 856-57. But as the ALJ noted, mental status examinations in February, March, and April 2024 were unremarkable, with each showing that Plaintiff had normal appearance, speech, thought process, thought content, alertness, orientation, memory, insight, judgment, impulse control, and intelligence. See AR 6879, 6960, 7000. Plaintiff does not refute the ALJ's mental status findings.

Additionally, the ALJ found that Plaintiff's mental health testimony conflicted with the record evidence indicating her improved condition. See AR 35. "Impairments that can be controlled effectively with medication are not disabling" for purposes of determining eligibility for benefits. Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006); see also Wellington v. Berryhill, 878 F.3d 867, 876 (9th Cir. 2017) (explaining that symptoms may wax and wane during progression of mental disorder but that "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability"). The ALJ noted that Plaintiff frequently told treatment providers that she was generally doing good and getting better. See AR 2061 ("doing good"), 3887 (feeling down but doing better), 5621 ("doing good"), 5781 (some anxiety and depression but "doing alright" and "better"), 5887 ("feeling good"), 6954 ("doing way better"), 6995 ("doing better").

Plaintiff also takes issue with the ALJ's finding that her testimony was inconsistent with her daily activities. See Pl.'s Br. at 14-15. "Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." Ghanim v. Colvin, 763 F.3d

1154, 1165 (9th Cir. 2014). Daily activities may form the basis of an adverse credibility determination if they "contradict [a claimant's] other testimony" or if the claimant "is able to spend a substantial part of his [or her] day" doing things "transferable to a work setting." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). "Even if the claimant experiences some difficulty or pain, her daily activities 'may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.'" Smartt, 53 F.4th at 499 (citation omitted).

    The ALJ found that Plaintiff's daily activities of preparing meals, cleaning, washing dishes, and doing laundry were "specifically inconsistent" with her subjective complaints about hand pain, fatigue, weakness, and chronic pain. AR 35. The Court agrees with Plaintiff that the ALJ's finding is not supported by substantial evidence. Plaintiff testified that she performs some basic chores "when she feels good." AR 843-84. In response to the ALJ's question, Plaintiff clarified that if she pushes herself to clean, it will take her "two or three days to recover from the swelling and the joint pain." AR 845. And with respect to the laundry, Plaintiff testified she can only "start something," with her son needing to take the clothes out and to a dryer. See AR 845. Plaintiff's statements that she can perform some minimal number of daily activities is not inconsistent with her testimony regarding her limitations.

    The ALJ next found that Plaintiff's testimony regarding her ability to ambulate were inconsistent with the evidence and observations of others. See AR 36. Plaintiff argues, as she did with respect to her RFC, that the ALJ erred by "merely reciting medical evidence." Pl.'s Br. at 15. The Court disagrees. Plaintiff testified that she had pain with ambulation and needed a cane, and, with increasing frequency, a walker to ambulate. See AR 851. However, the record evidence largely indicated that Plaintiff had a steady, independent gait.

See AR 2264, 5726-27. And, as the Court noted above, Plaintiff's only evidence of her need for a walker is a telephone visit where she requested one from her provider. See AR 6880 ("Pt requesting DME for walker due to chronic knee pain.").

Last, Plaintiff asserts that none of the ALJ's cited references address her allegation of hand pain, fatigue, or chronic pain. See Pl.'s Br. at 15-16. However, the ALJ did address those allegations, see AR 34, ultimately crafting an RFC that accounted for many of those limitations, see AR 33. Furthermore, the ALJ found that some of Plaintiff's testimony concerning her physical impairments were inconsistent with her improved condition. See AR 36. Plaintiff argues that the ALJ's citations all pertain to her "mental health" but that is not accurate. For instance, the ALJ noted that in August 2021, Plaintiff's systemic lupus erythematosus was "mild" and she had "normal CBC and CMP readings." AR 2373. The ALJ also noted that in January 2022, Plaintiff's lupus was mild. See AR 2281. The ALJ's explicit findings undermine Plaintiff's claim that the ALJ ignored her physical issues.

"Ultimately, the 'clear and convincing' standard requires an ALJ to show [her] work," which the ALJ did here. Smartt, 53 F.4th at 499. "Not every reason need be supported by substantial evidence, but the 'ultimate credibility determination' must be." Baker v. Saul, 836 F. App'x 526, 530 (9th Cir. 2020) (quoting Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008)).

The ALJ gave at least two clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's testimony. Because the ALJ gave multiple legally sufficient reasons to support the overall credibility determination, any errors in the additional reasons given were harmless. See Ford v. Saul, 950 F.3d 1141, 1154 (9th Cir. 2020) (explaining that an error is harmless if it is "inconsequential to the ultimate nondisability determination"

(citation omitted)); see also Buck v. Berryhill, 869 F.3d 1040, 1048 (9th Cir. 2017) (explaining that a district court "may not reverse an ALJ's decision on account of a harmless error" (citation omitted)). Overall, the ALJ's reasoning sufficed to show that she did not arbitrarily discredit Plaintiff's allegations. See Brown-Hunter, 806 F.3d at 493.

Remand is not warranted on this claim of error.

## IV. CONCLUSION

The agency's denial of benefits is affirmed and this action is dismissed with prejudice.

Date: December 1, 2025

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge